IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| ANNETTE KINGSOLVER | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No: |
| | ) | |
| v. | ) | |
| | ) | |
| MERRICK GARLAND, in his official | ) | JURY DEMANDED |
| Capacity as United States Attorney General, | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| JUSTICE, and BUREAU OF ALCOHOL, | ) | |
| TOBACCO, AND FIREARMS, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

This action is brought pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.*, by Plaintiff Annette Kingsolver based on the failure of her former employer, the Bureau of Alcohol, Tobacco and Firearms ("ATF"), to provide reasonable workplace accommodations for her cardiac arrythmia and depression and thereby demoting her.

## THE PARTIES

1. Plaintiff Annette Kingsolver ("Plaintiff" or "Kingsolver") is a resident of Glynn County, Georgia, and was, at all times material herein, an employee of the Bureau of Alcohol, Tobacco and Firearms ("ATF" or "the Agency") a division of the U.S. Department of Justice ("DOJ"), at its facility at the Federal Law Enforcement Training Center ("FLETC") in Glynn County, Georgia.

1

2. Defendants are the United States Attorney General, Merrick Garland, the United States Department of Justice ("DOJ"), and the Bureau of Alcohol, Tobacco and Firearms ("ATF").

## FACTS

3. Plaintiff began employment with Defendant ATF in July 1997, serving as a Management Assistant, GS-7, in the Budget Branch at the FLETC facility in Glynn County Georgia.

4. Plaintiff was promoted to the position of Management Analyst, GS-9, on March 22, 2007.

5. Beginning in the fall of 2006 and at all times material herein, Plaintiff's first-line supervisor was Ms. Abra Lattany-Reed ("Reed"), and her second-line supervisor was Mr. Thomas Brandon ("Brandon").

6. Plaintiff was first diagnosed with clinical depression in 1990, and was hospitalized for this condition in 1994. As of 2007, she still suffered from depression and had been diagnosed with cardiac arrythmia as well. She was prescribed an antidepressant. Two treating physicians notified the Defendant that stress diminishes her ability to think, concentrate and make decisions, not limited to the workplace or any one job; and that her cardiac arrythmia is only marginally controlled by medication in times of stress.

7. Stress at Defendant's workplace caused elevation of Plaintiff's heart rate; on two occasions, she was taken to the hospital from the emergency facility at FLETC.

8. On or about May 27, 2007, Plaintiff provided Reed with a letter from Mitchell Jones, M.D. ("Dr. Jones"), her cardiologist, stating that work-related stress was a "precipitating factor for [Plaintiff's] cardiac arrythmia." The letter asked management to "consider this as a request for review of her current job description."

9. On or about May 29, 2007, Plaintiff provided Reed with a letter from Anthony Moran, M.D. ("Dr. Moran"), her hematologist, which recommended a review of Plaintiff's workload due to work-related stress and the effects it had on her depression.

10. Reed immediately offered Plaintiff two accommodations: (1) she moved Plaintiff to an office with a window, and (2) she offered Plaintiff liberal use of her annual and sick leave and flexibility in her work schedule. As to the second proposed accommodation, Reed knew that Plaintiff had accumulated 240-plus hours of annual leave; she also knew that all employees in the division had flexible work schedules; thus the offer was not really an accommodation.

11. On June 14, 2007, Plaintiff provided Reed with a memorandum requesting reassignment to another position due to her health; she attached medical documentation from Dr. Jones in support of her request.

12. Subsequently, Reed initiated a telephone conference with Plaintiff and Brandon. During the conference, Reed and Brandon asked Plaintiff to enumerate her work-related stressors.

13. Plaintiff submitted the requested documentation to Reed on or about June 29, 2007. Plaintiff's documentation referred specifically to the ATF's financial system, Financial Resource Desktop System ("FReD") as the cause of her frustration and stress, which exacerbated both her depression and cardiac arrhythmia.

14. On July 5, 2007, Reed confirmed that she had conveyed the information to Mr. Brandon.

15. On or about July 19, 2007, Reed and Brandon met with Plaintiff, at which time they provided Plaintiff for the first time with ATF's reasonable accommodation request form. Reed considered, but did not offer Plaintiff, the opportunity for telework. Although Reed was aware that leave under the Family and Medical Leave Act ("FMLA") was an option for Plaintiff, she did not discuss it with Plaintiff as a potential accommodation.

16. Plaintiff learned from ATF management that some GS-9 positions might be available in October for which she could apply.

17. Based on this information, Plaintiff waited until October 1, 2007, to submit her request for reasonable accommodation. She requested a transfer from the budget area to a position in another ATF program area that was comparable to the GS-9

Management Analyst position she held at the time. She submitted medical documentation from Dr. Jones with her request.

18. The following day, on October 2, 2007, Reed offered Plaintiff use of annual leave or paid leave as accommodation.

19. A week later, on October 9, 2007, Plaintiff met with Reed, who told Plaintiff she had two choices for accommodation: (1) take a leave of absence using her annual and sick leave or (2) accept a transfer to a GS-7 ISTB Management Assistant position. Reed told Plaintiff that the GS-7 position was the only one immediately available at that time, and that there were no other GS-9 positions within the commuting area of the FLETC office. Reed did not conduct a search for comparable GS-9 positions outside of Plaintiff's commuting area nor did she explore the option of teleworking, both of which would have been acceptable reasonable accommodations.

20. The following day, on October 10, 2007, Plaintiff accepted the GS-7 Management Assistant position. Effective November 25, 2007, AFT demoted Plaintiff from the GS-9 position to the GS-7 position.

## EXHAUSTION OF REMEDIES

21. Plaintiff filed a formal complaint with the DOJ Equal Employment Opportunity Commission ("EEOC"), alleging failure to accommodate and reprisal, on January 2, 2008.

22.     In January 2012, an EEOC Administrative Judge ("AJ") determined that the ATF failed to accommodate Plaintiff and, after a hearing in July 2012, a damages decision was entered in September 2013, awarding Plaintiff damages and attorney's fees.

23.     DOJ appealed the decision to the EEOC Office of Federal Operations ("OFO"), and on December 3, 2015, the OFO affirmed that Plaintiff is a qualified individual with a disability and reversed the damages award and remanded for a liability hearing in order to determine credibility issues on Plaintiff's complaint of failure to accommodate.

24.     On September 28, 2018, another EEOC AJ determined that ATF failed to reasonably accommodate Plaintiff and ordered (1) reassignment of Plaintiff to a position in which she would be paid at the GS-9 level or above; (2) backpay for all additional pay and benefits Plaintiff would have received if she had remained in her GS-9 position; (3) damages and (4) attorney's fees and costs.

25.     DOJ appealed the September 2018 decision to OFO, which reversed that decision and dismissed Plaintiff's complaint.

26.     Plaintiff filed a motion for reconsideration to the OFO on September 22, 2022, which was denied.

27.     On February 22, 2023, the EEOC issued an email notifying the Plaintiff's attorney that Plaintiff's case was closed.

## COUNT 1

REHABILITATION ACT OF 1973

28. Plaintiff is a qualified individual with two disabilities, cardiac arrythmia and depression.

29. Plaintiff notified Defendant of her need for reasonable accommodation and provided Defendant with ample medical documentation.

30. Defendant failed to engage in a good faith interactive process with Plaintiff to identify Plaintiff's limitations and what accommodations could potentially effective.

31. As a result of Defendant's failure to reasonably accommodate Plaintiff, Plaintiff was demoted.

32. As a result of Defendant's failure to reasonably accommodate Plaintiff, Plaintiff has suffered loss of pay, nonpecuniary damages, and incurred attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant her the following relief:

1. Defendant be directed to reinstate Plaintiff equivalent to the Management Analyst GS-9 position that she held in 2007;

2. Defendant be directed to pay Plaintiff backpay for all salary and benefits she would have received had she not been demoted on November 25, 2007 and had retained employment at the GS-9 level;

3. Defendant be directed to pay Plaintiff $125,000 in compensatory damages;

4. Defendant be directed to pay attorneys' fees and costs; and

5. Any and all other relief the Court deems appropriate.

This 22nd Day of May, 2023.

Respectfully submitted,

/s/ Andrew M. Ruberti
Andrew M. Ruberti
State Bar No. 463231
Mary Helen Moses
State Bar No. 437900
Connell, Thaw & Ruberti, LLC
139 Follins Lane
St. Simons Island, GA 31522
(912) 266-1814
andrew@ctrfirm.com
emily@ctrfirm.com
maryhelenmoses@gmail.com
