# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

ANNETTE KINGSOLVER,

    Plaintiff,

    v.

MERRICK GARLAND, U.S.
DEPARTMENT OF JUSTICE, and
BUREAU OF ALCOHOL, TOBACCO,
AND FIREARMS,

    Defendants.

2:23-CV-58

## ORDER

Before the Court is Defendants' motion for summary judgment, dkt. no. 21, as well as Plaintiff's motion for summary judgment, dkt. no. 23. The motions have been thoroughly briefed and are ripe for review. Dkt. Nos. 21, 23, 25, 26, 29, 30. The Court heard oral argument on November 25, 2024. Dkt. No. 32. For the reasons stated below, Defendants' motion is **GRANTED**, and Plaintiff's motion is **DENIED**.

## BACKGROUND

This case arises from Plaintiff Annette Kingsolver's employment with the Bureau of Alcohol, Tobacco and Firearms ("ATF"), a division of the Department of Justice ("DOJ"), at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia. Dkt. No. 1 ¶ 1. Plaintiff alleges that ATF violated the

Rehabilitation Act by failing to accommodate her and demoting her. Id.

Plaintiff began working with ATF in 1997. Dkt. No. 21-5 at 3, 10:16. In June 2005, ATF transferred Plaintiff to the Budget team; at this time, she was a GS-7 employee.[1] Id. at 4, 13:1-4. On the Budget team, Plaintiff's job required her to work in the Financial Resource Desktop ("FReD") software system. Dkt. No. 23-7 ¶¶ 2, 4. At the beginning of 2007, Plaintiff was promoted to Management Analyst within the Budget team and became a GS-9 employee. Dkt. No. 21-2. Up until 2007, Plaintiff received "Outstanding" job performance reviews; in 2007, however, she received a "Fully Successful" performance review. Dkt. No. 21-3.

Plaintiff suffers from depression and cardiac arrythmia. Dkt. No. 25-1 ¶ 7. In late April 2007, Plaintiff became increasingly stressed at work; this caused her to have an "uncontrollable" crying episode in her office. Dkt. Nos. 21-5 at 5, 20:4-24, 21-8. Shortly thereafter, Plaintiff's direct supervisor met with her and advised her of ATF's Employee Assistance Program for struggling employees.[2] Dkt. Nos. 21-7 at 6, 11:2-24, 21-8. Plaintiff then took a two-week vacation followed by a week-long FReD training and returned to the office in late May 2007. Dkt. No. 21-7 at 7-8,

---

[1] "GS" refers to the General Schedule pay scale for federal government employees.
[2] The parties dispute whether Plaintiff made any requests from her supervisor at this late April meeting. Dkt. No. 25-1 ¶ 13.

12:12-13:6. Upon her return, Plaintiff's supervisor went to Plaintiff's office and checked in on her. Id. at 7, 13:8-16. At this time, Plaintiff explained that her condition was worsening and asked for leave without pay, a lateral transfer, or anything else to help her. Dkt. No. 23-6 at 8, 26:4-15. Plaintiff's supervisor offered her liberal use of leave with a flexible schedule and explained that Plaintiff could take sick leave or annual paid leave. Dkt. Nos. 1 ¶ 10, 3 ¶ 10, 21-7 at 10, 15:12-16. However, leave without pay, her supervisor explained, was not an option. Dkt. No. 21-5 at 7, 27:5-7, 21-7 at 9-10, 14:13-15:21. Her supervisor also explained that the only position available with ATF was a GS-7 position, not a GS-9. Dkt. No. 21-5 at 7, 27:2-4. Two days later, Plaintiff's second-line supervisor met with her. Dkt. No. 25-1 ¶ 19. She again asked for leave without pay or a lateral transfer. Id. Her second-line supervisor's response was the same as her direct supervisor's. Id. ¶ 20. Plaintiff also gave a letter from her doctor to an ATF employee, who was not her supervisor, suggesting that her windowless office worsened her condition. Dkt. Nos. 21-10, 21-17 ¶¶ 15, 41, 26-1. Her supervisors moved her to an office with a window. Dkt. No. 25-1 at 24, 93:19-24.

On June 19, 2007, Plaintiff's supervisors held a conference call with Plaintiff to discuss her conditions. Dkt. No. 21-7 at 18, 23:2-13. On this call, Plaintiff's supervisors asked her for

a list of her stressors so the supervisors could address them; Plaintiff created this list. Id. at 18–19, 23:2–24:11. Plaintiff's supervisors met with her again on July 19, 2007, at her request; at this time, they gave Plaintiff the DOJ Form 100A, Request for Reasonable Accommodations, for her to complete. Dkt. No. 21-5 at 58, 229:5–231:4. On August 16, 2007, Plaintiff's supervisors met with her again to discuss her conditions; she had not completed the DOJ Form 100A. Dkt. No. 21-7 at 35:1–36:5.

Finally, on October 1, 2007, Plaintiff submitted the DOJ Form 100A to her supervisor, requesting a lateral transfer to a comparable position outside of Budget, where she would not have to work in FReD. Dkt. No. 21-12. It is undisputed that no lateral position was available at this time. Dkt. Nos. 21-17 ¶ 54, 26-1. In the following days, Plaintiff and her supervisor met several times to discuss her request form; Plaintiff's supervisor advised her that the only open position was a GS-7 position. Dkt. Nos. 21-4 at 71:20–73:13, 21-5 at 14–16, 54:5–63:2. On October 10, 2007, Plaintiff revised her form to state "As of 10/10/07, I will accept another program area position comparable to the management analyst position that I currently hold or the GS 07-06 management assistant position that I previously held." Dkt. No. 21-14. It is undisputed that Plaintiff's supervisor dictated this language to Plaintiff to revise her form. Dkt. No. 25-1 ¶ 51. Plaintiff formally accepted the new GS-7 position on October 19, 2007, and her transfer was

finalized on November 25, 2007. Dkt. Nos. 21-7 at 50, 55:6–56:19, 21-15, 21-17 ¶ 70, 26-1.

Meanwhile, on November 16, 2007, Plaintiff contacted the DOJ's Equal Employment Opportunity ("EEO") staff to complain that the transfer to her new GS-7 position was not a voluntary reassignment but instead a demotion that she was forced to take. Dkt. No. 21-16 at 1. The EEO administrative review of her reassignment was incredibly lengthy; Plaintiff did not receive notice of her right to sue until February 22, 2023. Dkt. No. 1 ¶¶ 21-27. Plaintiff timely filed this suit alleging against the DOJ and ATF one count of disability discrimination under the Rehabilitation Act. Id. ¶¶ 28-32. Both parties now move for summary judgment. Dkt. Nos. 21, 23.

**LEGAL AUTHORITY**

**I.    Summary Judgment**

The Court should grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of

a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of those material facts "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient" for a jury to return a verdict for the nonmoving party. Id. at 252. Additionally, the party opposing summary judgment "may not rest upon the mere allegations or denials in [her] pleadings. Rather, [her] responses . . . must set forth specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

The Court views the record evidence "in the light most favorable to the [nonmovant]," Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and will draw all justifiable inferences in the nonmovant's favor, Anderson, 477 U.S. at 255.

**II. Cross Motions for Summary Judgment**

When there are cross-motions for summary judgment, "the district court must methodically take each motion in turn and construe all the facts in favor of the non-movant for each." Thai

Meditation Ass'n of Ala., Inc. v. City of Mobile, 83 F.4th 922, 926 (11th Cir. 2023). After doing this, if there is no genuine issue of material fact, then summary judgment can be entered if one party is entitled to judgment as a matter of law. Id. It should be noted that cross-motions for summary judgment "'may be probative of the nonexistence of a factual dispute[,]'" but it "'does not automatically empower the court' to enter summary judgment for one party." Id. (quoting Ga. State Conf. of NAACP v. Fayette Cnty., 775 F.3d 1336, 1345 (11th Cir 2015), then quoting La Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt, 700 F.2d 341, 349 (7th Cir. 1983)). The filing of cross motions for summary judgment does not alter the Rule 56 standard. See 3D Medical Imaging Sys., LLC v. Visage Imaging, Inc., 228 F. Supp. 3d 1331, 1336 (N.D. Ga. 2017); Westport Ins. Corp. v. VN Hotel Grp., LLC, 761 F. Supp. 2d 1337, 1341 (M.D. Fla. 2010).

## DISCUSSION

The Rehabilitation Act protects federal government employees against employment discrimination. 29 U.S.C. § 791. To establish a prima facie case of discrimination under the Rehabilitation Act, Plaintiff must show that (1) she has a disability, (2) she is otherwise qualified for the position, and (3) she was subjected to unlawful discrimination as a result of her disability.[3] Boyle v.

---

[3] The same standards govern Rehabilitation Act and Americans with Disabilities Act claims. Silberman v. Miami Dade Transit, 927 F.3d

<u>City of Pell City</u>, 866 F.3d 1280, 1289 (11th Cir. 2017) (citing <u>Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.</u>, 507 F.3d 1306, 1310 (11th Cir. 2007)). "Unlawful discrimination under the Rehabilitation Act includes failing to provide reasonable accommodations for employees' known disabilities." <u>Owens v. Ga., Governor's Off. of Student Achievement</u>, 52 F.4th 1327, 1334 (11th Cir. 2022) (citing <u>Boyle</u>, 866 F.3d at 1289).

Defendants argue that Plaintiff cannot prove the three elements of a Rehabilitation Act claim. Dkt. No. 21. Defendants assert that Plaintiff is not a qualified individual with a disability, and even if she is, Defendants granted her only request for a reasonable accommodation. <u>Id.</u> at 7, 24. Defendants argue that any other accommodations request is not actionable because Plaintiff failed to exhaust her administrative remedies. <u>Id.</u> at 9.

Plaintiff argues that she is entitled to judgment as a matter of law because she has established the three elements of a disability discrimination claim. Dkt. No. 23. Plaintiff contends that the administrative exhaustion requirement does not bar any of her claims of discrimination, and even if it does, the Court should apply equitable tolling. Dkt. No. 26.

---

1123, 1133 (11th Cir. 2019). As such, courts may "rely on cases construing those statutes interchangeably." <u>Almond v. Akal Sec. Inc.</u>, 558 F.3d 1312, 1316 n.3 (11th Cir. 2009).

Because Defendants are entitled to summary judgment on the third element, the Court assumes without deciding that Plaintiff is a qualified individual with a disability.[4] Thus, the Court confines its discussion to the third element of a Rehabilitation Act claim: disability discrimination.[5]

"An employer unlawfully discriminates against an otherwise qualified person with a disability when it fails to provide a reasonable accommodation for the disability, unless doing so would impose an undue hardship on the employer." Boyle, 866 F.3d at 1289 (citing Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001)). "The plaintiff bears the burden of identifying an accommodation and showing that the accommodation would allow him to perform the essential functions of the job in question." Id. Essential functions are the fundamental duties of the employment position at issue. D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1230 (11th Cir. 2005) (citing 29 C.F.R. § 1630.2(n)(1)).

---

[4] It is undisputed that Plaintiff suffered from cardiac arrythmia and depression at the relevant time. Dkt. No. 25-1 at 4. The Eleventh Circuit has held that depression may constitute a disability under the ADA and RA. Pritchard v. S. Co. Servs., 92 F.3d 1130, 1132 (11th Cir.), amended on reh'g, 102 F.3d 1118 (11th Cir. 1996) (reversing summary judgment on the first element, disability, but leaving open on remand whether the plaintiff was a qualified individual and was discriminated against because of her disability).

[5] Accordingly, the Court need not reach the parties' arguments regarding the extent to which Plaintiff's depression substantially limits her ability to work or the Court's ability to consider Plaintiff's doctors' opinions under Federal Rule of Civil Procedure 37. Dkt. Nos. 21 at 24–26, 26 at 25, 29 at 5–6.

The parties disagree about (1) which allegedly discriminatory acts the Court should analyze, and (2) whether those acts constitute discrimination under the Rehabilitation Act. The Court addresses these two issues in turn.

## I. Plaintiff Did Not Comply With The Rehabilitation Act's Administrative Exhaustion Requirement For Any Requests Before October 2, 2007.

Plaintiff argues that the Court should consider (1) Plaintiff's request for leave without pay or a lateral transfer in late April 2007 from her direct supervisor; (2) Plaintiff's request for leave without pay, a lateral transfer, or a request to her two superiors for review of her current job description in late May 2007; (3) Plaintiff's request for general "help" from her two superiors in June 2007; (4) Plaintiff's request for leave without pay or a lateral transfer from her two superiors in July 2007; (5) Plaintiff's submission of the Request for Reasonable Accommodation Form (DOJ Form 100A) requesting a lateral transfer on October 1, 2007. Dkt. No. 30-1 at 13–18. Meanwhile, Defendants argue that Plaintiff revised and resubmitted the DOJ Form 100A on October 10, 2007, and this formal request for reasonable accommodations is the only request that the Court should consider. Dkt. No. 21 at 11. Defendants argue any accommodation requests before October 2, 2007, are time-barred because a Rehabilitation Act claimant must initiate administrative review within forty-five days of the discriminatory act. It is undisputed that Plaintiff did not contact

10

the DOJ's EEO staff to begin administrative review until November 16, 2007. Dkt. Nos. 21-17 ¶ 80, 26-1.

**A. The Requests Before October 2, 2007, Are Time-Barred.**

"A federal employee has a duty to exhaust his procedural remedies concerning any allegedly discriminatory act before challenging the act in federal court by raising his claims through an internal complaint process with the employing agency." Fleck v. Sec'y, U.S. Dep't of Transp., 826 F. App'x 782, 784 (11th Cir. 2020) (citing Ellis v. England, 432 F.3d 1321, 1323-24 (11th Cir. 2005)). An aggrieved federal employee who believes she has been discriminated against on the basis of disability must consult with EEO staff within forty-five days of the discriminatory act or personnel action. 29 C.F.R. § 1614.105(a)(1) (2007). In Green v. Brennan, the United States Supreme Court interpreted this regulation's forty-five-day clock in the context of a Title VII forced resignation case. 578 U.S. 547, 549 (2016). The Supreme Court held that the forty-five-day clock begins to run on the date of the adverse employment action—there, forced resignation. Id. at 556. In the case of demotion, as alleged here, "the limitations period would run from the date of demotion." Id. at 575 n.5 (Alito, J., concurring) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110-13 (2002)). The parties agree that Plaintiff accepted the new position on October 10, 2007, and it became effective on November 25, 2007. Dkt. Nos. 1 ¶ 20, 21-17 ¶ 66, 26-1; see also

Shiver v. Chertoff, 549 F.3d 1342, 1344 (11th Cir. 2008) (holding that the forty-five-day period began to run the date that the plaintiff learned that his demotion had become effective in a Rehabilitation Act case). Thus, Plaintiff's challenge of her alleged demotion was timely because she contacted the EEO within forty-five days thereof. The question, then, is whether Plaintiff can challenge any alleged discriminatory acts from when she first met with her supervisor in April 2007 until her transfer to the GS-7 position in November 2007.

"The limitations-period analysis is always conducted claim by claim." Green, 578 U.S. at 563. Defendants argue that each of Plaintiff's alleged accommodation requests beginning in April 2007 gives rise to a separate discrimination claim, and thus, has a separate forty-five-day limitations period. Dkt. No. 21 at 10. The Eleventh Circuit has concluded that the continuing violation doctrine is inapplicable in ADA cases where each "failure to grant her requested accommodations involved discrete acts of alleged discrimination."[6] Abram v. Fulton Cnty. Gov't, 598 F. App'x 672,

---

[6] "The continuing violation doctrine holds that a Plaintiff's action is not time-barred where some of the alleged violations occurred within the statutory period, even though other violations did not, because the early acts were part of a continuing wrong." Price v. Owens, 634 F. Supp. 2d 1349, 1358 (N.D. Ga. 2009) (citing Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1221 (11th Cir. 2001)).

676 (11th Cir. 2015). The district courts in this circuit have also consistently concluded that each instance of denying an accommodations request is a separate violation. <u>See, e.g.</u>, <u>Mullin v. Sec'y, Dep't of Veteran Affs.</u>, No. 8:20-cv-2697-VMC-AEP, 2022 WL 2159721, at *12 (M.D. Fla. June 15, 2022) (Rehabilitation Act disability discrimination case); <u>Johns v. Marsh & McLennan Agency LLC</u>, No. 3:19-cv-687-ALB-SRW, 2020 WL 1540397, at *2 (M.D. Ala. Mar. 31, 2020) (holding that an ADA claim was time-barred "where her employer granted the request for accommodation that it had previously denied"); <u>Ramsey v. Greenbush Logistics, Inc.</u>, No. 3:17-cv-01167-AKK, 2017 WL 6492608, at *3 (N.D. Ala. Dec. 19, 2017) (concluding that each denial of a transfer request is a discrete act); <u>Salser v. Clarke Cnty. Sch. Dist.</u>, No. 3:10-CV-17 CDL, 2011 WL 56064, at *3 (M.D. Ga. Jan. 5, 2011) ("[E]ach discrete act 'must be challenged as separate statutory discrimination and retaliation claims.'" (citation omitted)); <u>Tarmas v. Mabus</u>, No. 3:07-cv-290-J-32TEM, 2010 WL 3746636, at *4 (M.D. Fla. Sep. 21, 2010), <u>aff'd</u> <u>Tarmas v. Sec'y, U.S. Navy</u>, 433 F. App'x 754, 763 (11th Cir. 2011) (per curiam) (Even where the EEO considered every claim the plaintiff raised before it, discrete failures to accommodate and grant transfer requests were time-barred under the Rehabilitation Act.); <u>Kennedy v. S. Univ.</u>, No. 4:21-cv-172, 2022 WL 628541, at *8 n.17 (S.D. Ga. Mar. 3, 2022) (Each failure to accommodate is a discrete act even when it caused a future adverse consequence.);

<u>Campbell v. Boies</u>, 543 F. Supp. 3d 1334, 1344 (S.D. Fla. 2021) ("[A]ny subsequent request for the same accommodation does not, and cannot, restart the statute of limitations period." (citation omitted)); <u>Smith v. U.S. Dep't of the Army</u>, No. 21-12478, 2022 WL 1053266, at *2 (11th Cir. Apr. 8, 2022) (per curiam) (treating the denial of an accommodation request and the ultimate personnel action, such as forced resignation or demotion, as two separate claims under the Rehabilitation Act for the forty-five-day clock). Thus, it is the law of this Circuit that each accommodation request and the failure to grant it constitutes a separate claim running the forty-five-day clock. Therefore, Plaintiff cannot argue that any denial of an accommodations request before October 2, 2007, constituted discrimination because Plaintiff's first contact with the EEO occurred on November 16, 2007. <u>See</u> Dkt. No. 21-16.

**B. Equitable Tolling Does Not Apply.**

"The Supreme Court has held that 'filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a prerequisite that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'" <u>Tarmas</u>, 433 F. App'x at 759–60 (Rehabilitation Act case) (quoting <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393 (1982)). "Equitable tolling is an extraordinary remedy to be applied sparingly[] and is appropriate when a plaintiff untimely files due to extraordinary circumstances that are both beyond her

control and unavoidable even with diligence." <u>Horsley v. Univ. of Ala.</u>, 564 F. App'x 1006, 1008–09 (11th Cir. 2014) (citing <u>Arce v. Garcia</u>, 434 F.3d 1254, 1261 (11th Cir. 2006)). "[E]quitable tolling typically requires some affirmative misconduct, such as fraud, misinformation, or deliberate concealment." <u>Id.</u> at 1009. It is Plaintiff's burden to show that she is entitled to equitable tolling. <u>Abram</u>, 598 F. App'x at 675 (citing <u>Bost v. Fed. Express Corp.</u>, 372 F.3d 1233, 1242 (11th Cir. 2004)).

Plaintiff must show that the forty-five-day window should be extended because she "was not notified of the time limits and was not otherwise aware of them." <u>Ramirez v. Sec'y, U.S. Dep't of Transp.</u>, 686 F.3d 1239, 1243 (11th Cir. 2012) (quoting 29 C.F.R. § 1614.105(a)(2)). Plaintiff argues that equitable tolling applies because (1) her superiors did not have "any real information about the processing of reasonable accommodation requests" and (2) the agency did not follow its own reasonable accommodations manual.[7] Dkt. No. 26 at 15–16. The undisputed facts contradict these arguments because Plaintiff's supervisors continually met with her to discuss her condition, moved her to an office with a window, gave her the Request for Reasonable Accommodation form months before she submitted it, and kept her apprised of the lack of a

---

[7] The manual refers to the DOJ Manual and Procedures for Providing Reasonable Accommodation ("DOJ Manual") from October 2002. Dkt. No. 23-1 at 102.

vacant position for a lateral transfer. Dkt. Nos. 21-17 ¶¶ 29, 48,
50-55, 26-1. These events constitute "an interactive and flexible
process between the employee and supervisor in order to identify
an effective accommodation" as required by the DOJ manual. Dkt.
No. 23-1 at 104. Giving Plaintiff the DOJ 100A form also shows the
supervisors' knowledge of processing reasonable accommodation
requests. Id. (The DOJ manual provides that the first step in the
request process, under most circumstances, is the employee
completing the DOJ Form 100A.).

    Plaintiff has not shown that the circumstances that delayed
her submission of the DOJ 100A form until October 2007 were "both
beyond her control and unavoidable even with diligence." Horsley,
564 F. App'x at 1008-09; see generally Dkt. No. 26. The manual
states that in most cases, it is the obligation of the employee to
understand the reasonable accommodations procedures. Dkt. No. 23-
1 at 104. Defendants have shown that Plaintiff completed her EEO
training, which explained her obligations in the reasonable
accommodation process and provided the PowerPoint training slide
covering the forty-five-day deadline. Dkt. No. 21-1 at 1-6, 43. It
is undisputed that Plaintiff did not submit the DOJ Form 100A for
over two months after her supervisors provided it to her. Dkt. No.
26-1 ¶ 55. Plaintiff argues that she delayed submitting the form
because she was awaiting new positions to become available for a
lateral transfer. See, e.g., Dkt. Nos. 23 at 16, 23-7 ¶ 41. This

explanation does not warrant the extraordinary remedy of equitable tolling. First, Plaintiff's delay was completely within her control. See Dkt. No. 23-6 at 33, 125:24–126:1. Further, Plaintiff's delay rests solely on her subjective perception that new positions would serve as a reasonable accommodation. See Dkt. No. 23-4 at 78, 77:1–18 (Plaintiff testified that her supervisors could not and did not "promise" her these new positions.); Stewart v. Happy Herman's Cheshire Bridge, 117 F.3d 1278, 1286 (11th Cir. 1997) (An employee is "not entitled to the accommodation of her choice," or the accommodation that she perceives to be best, "but only to a reasonable accommodation" under the law. (citation omitted)). Finally, Plaintiff's reason for delay does not explain her failure to initiate review of the alleged denials of her other requests—made as early as April 2007—for leave without pay. Thus, equitable tolling is improper here, and the Court does not consider any requests for reasonable accommodations allegedly made before October 2, 2007.

## II. Defendants Did Not Discriminate Against Plaintiff.

### A. The Undisputed Facts Show that Plaintiff was not Forced to Take the GS-7 Position.

The Court now considers whether Plaintiff's alleged demotion constitutes discrimination under the Rehabilitation Act. Defendants' primary argument is that Plaintiff requested the transfer on her DOJ Form 100A, Request for Reasonable

Accommodations form, and therefore, granting that request is not discrimination. Dkt. No. 21 at 7-8. It is true that where the agency approves a plaintiff's request, it does not fail to accommodate. E.g., Porterfield v. SSA, No. 20-10538, 2021 WL 3856035, at *5 (11th Cir. Aug. 30, 2021).

Plaintiff's primary argument is that Defendants did not grant her request for accommodation, rather her supervisors coerced her into requesting a demotion.[8] Dkt. No. 26 at 13. In the Eleventh Circuit, when an employee and employer disagree over whether an employment action was forced, the action is presumed voluntary, unless the employer forces the resignation or demotion "by coercion or duress," or the employer obtains the resignation or demotion "by deceiving or misrepresenting a material fact to the employee." Hargray v. City of Hallandale, 57 F.3d 1560, 1568 (11th Cir. 1995) (per curiam) (holding that a public employee's resignation was voluntary and thus did not constitute adverse action in the context of a due process claim). To determine whether an employer forced an employment action through coercion or duress, courts look to five guiding factors:

> (1) whether the employee was given some alternative to resignation [or demotion]; (2) whether the employee understood the nature of the choice he was given; (3)

---

[8] At the hearing on the motions, Plaintiff seemed to retreat from this argument and stated that "coercion" is not the right word. Dkt. No. 32. The Court addresses Plaintiff's primary argument at the hearing—that Defendants nonetheless mishandled Plaintiff's request.

whether the employee was given a reasonable time in which to choose; (4) whether the employee was permitted to select the effective date of the resignation [or demotion]; and (5) whether the employee had the advice of counsel.

Id. (citation omitted); see Williams v. Ala. Dep't of Corr., No. 4:12-cv-4043-KOB, 2014 U.S. Dist. LEXIS 19712, at *21 (N.D. Ala. Feb. 18, 2014) (applying the Hargray framework to an ADA disability discrimination-disparate treatment claim); Mattingly v. Univ. of S. Fla. Bd. of Trs., 931 F. Supp. 2d 1176, 1189 (M.D. Fla. 2013) (applying the Hargray framework to an alleged demotion).

It is undisputed that Plaintiff amended her DOJ 100A Form, Request for Reasonable Accommodations, to say: "As of 10/10/07, I will accept another program area position comparable to the Management Analyst position that I currently hold or the GS 07-06 Management Assistant position that I previously held." Dkt. No. 21-14. It is also undisputed that Plaintiff accepted the position when it was given. Dkt. Nos. 25-1 ¶ 50, 21-17 ¶ 70, 26-1. The dispute is whether Plaintiff's supervisor forced her to write that statement. Dkt. Nos. 25-1 ¶ 51, 26-1 ¶ 67. It is Plaintiff's burden to present "sufficient evidence to establish" that the agreement to a reassignment or resignation was "involuntarily extracted." See Hargray, 57 F.3d at 1568 (quoting Christie v. United States, 518 F.2d 584, 587 (Ct. Cl. 1975)).

Plaintiff has presented undisputed evidence that her supervisor dictated the revision to the form and that she was

reluctant to take the lower pay-scale position. Dkt. Nos. 23-5 at 52:4–54:23, 25-1 ¶¶ 50, 51. Plaintiff has also established that she had approximately one day to decide to take the position before filling out the form. Dkt. No. 23-6 at 17, 61:24–64:20. The evidence also shows, however, that this occurred after months of Plaintiff's supervisors keeping her apprised of position vacancies, or a lack thereof. Dkt. Nos. 21-17 ¶¶ 29, 54, 65, 26-1. Plaintiff's supervisor also told Plaintiff that the reason she needed a decision within twenty-four hours was due to a meeting with Washington to seek approval of Plaintiff's transfer, not for an arbitrary reason to coerce Plaintiff into a decision. Dkt. No. 23-6 at 17, 64:7–15. Plaintiff was also given the alternative to take annual leave liberally or stay in her current position. Dkt. No. 23-6 at 17, 61:24–64:20.

These undisputed facts show that (1) Plaintiff was given an alternative to action; (2) Plaintiff understood the nature of the choice she was given; (3) Plaintiff may have perceived twenty-four hours as an unreasonable time in which to choose; (4) Plaintiff was not permitted to select the effective date of the action; and (5) Plaintiff did not have the advice of counsel. Beyond her own deposition, Plaintiff has presented no evidence to show that the transfer was "take it or leave it." Dkt. No. 25-1 ¶ 48; see also Hargray, 57 F.3d at 1568 ("The assessment of whether real alternatives were offered is gauged by an objective standard rather

20

than by the employee's purely subjective evaluation; that the employee may perceive his only option to be resignation is irrelevant." (alteration adopted) (citation omitted)). Further, Plaintiff testified that there was no indication that she would be removed from her current position if she did not take the GS-7 position. Dkt. No. 21-4 at 72:12–15, 73:4–6. Thus, Plaintiff's acceptance of the GS-7 position was not involuntary or coerced.

### B. Plaintiff Fails to Satisfy Her Burden to Identify a Reasonable Accommodation that was Denied.

Next, the Court considers Plaintiff's other verbal requests for a reasonable accommodation between October 2, 2007, and the submission of the amended DOJ 100A form on October 10, 2007. Plaintiff's requests for accommodations that were not granted include a lateral transfer or indefinite leave without pay. E.g., Dkt. Nos. 21-5 at 15, 59:15–60:10, 23 at 12. She also argues that after she made these requests, her supervisors failed to engage in the required interactive process to identify a reasonable accommodation. Dkt. No. 23 at 18; see also Wilson v. Sec'y, Dep't of Veteran Affs., No. 20-10799, 2022 WL 1907863, at *6 (11th Cir. June 3, 2022) (holding that summary judgment was improper where there was a dispute over whether the "breakdown" of the reasonable accommodation process was attributable to the employer or the employee).

21

Again, a request is reasonable "only if it enables the employee to perform the essential functions of the job" and if it does not "impose undue hardship on the employer." Lucas, 257 F.3d at 1255 (citation omitted). A reasonable accommodation does not require an employer to eliminate essential functions of the position or reallocate job duties to change the essential functions of the position. Holbrook v. City of Alpharetta, 112 F.3d 1522, 1528 (11th Cir. 1997). Plaintiff bears the burden to demonstrate that an accommodation is reasonable. Id.

First, reassignment to a vacant position can be a reasonable accommodation. 29 C.F.R. § 1630.2(o)(iii)(2)(ii) (2007). "However, even if a disabled employee is qualified for and capable of performing another existing position, the employer is not required to reassign the employee if there is no vacancy." Branscomb v. Sec'y, U.S. Navy, 461 F. App'x 901, 905 (11th Cir. 2012) (citing Lucas, 257 F.3d at 1257). The employer's duty to accommodate likewise does not require the employer to create a new position, move another employee from his or her position, or promote the disabled employee. Lucas, 257 F.3d at 1256. Here, it is undisputed that there were no open positions with the ATF for which Plaintiff was qualified between June 4 and October 1, 2007. Dkt. Nos. 21-17 ¶ 54, 26-1.[9] Reassignment to a GS-9 or higher position would have

---

[9] While not disputing that there were no vacant positions for which Plaintiff was qualified, Plaintiff simultaneously argues that her

required Defendants to create a new position, transfer another employee, or promote her to a GS-12. See id.; Dkt. Nos. 21-4 at 24:13-19, 21-5 at 79, 313:1-10. Therefore, Plaintiff has not met her burden to demonstrate that this accommodation was reasonable because it is undisputed that no GS-9 position for which Plaintiff was qualified existed at the relevant time.

Second, indefinite leave without pay is generally not a reasonable accommodation. Wood v. Green, 323 F.3d 1309, 1314 (11th Cir. 2003); Duckett v. Dunlop Tire Corp., 120 F.3d 1222, 1226 (11th Cir. 1997). Plaintiff argues that she did not ask for an *indefinite* leave of absence but does not point to any evidence showing that she requested leave for a specific period of time. Dkt. No. 26 at 5 (Plaintiff "simply wanted to 'get away'" from her job.); see also Billups v. Emerald Coast Utilities Auth., 714 F. App'x 929, 935 (11th Cir. 2017) (Denying a request for "a leave of absence that would allow [the plaintiff] to work 'at some indefinite point' in the future" does not constitute disability discrimination.);

---

supervisors should have looked for positions outside of the Branch, outside of FLETC, and outside of the commuting area. Dkt. No. 23 at 22. Plaintiff, however, fails to explain how this hypothetical position outside of the area would not "transform [her] position into another one"—which is not required under the RA or ADA. Lucas, 257 F.3d at 1260 (citation omitted). Likewise, at some point in the process, it is the obligation of the employee to "provide enough information" for the employer to understand how that accommodation would be reasonable, such as the information that Plaintiff was willing to uproot her life and relocate for a job. See Owens, 52 F.4th at 1335; Dkt. No. 21-5 at 78, 309:21-313:10.

Tolbert v. James, No. 2:13-CV-427-WKW, 2015 WL 2169950, at *8 (N.D. Ala. May 8, 2015) ("Although 'a leave of absence might be a reasonable accommodation in some cases,' a request for indefinite leave with no indication or assurance that the employee will be able to return to work in the present or immediate future is not a request for a reasonable accommodation." (quoting Wood, 323 F.3d at 1314)).

On this point, Plaintiff asserts that the leave she was seeking was Family and Medical Leave Act ("FMLA") disability leave, and her supervisor did not discuss disability leave with her even though it was her "responsibility" to make Plaintiff aware of her FMLA rights. Dkt. No. 26 at 23–24. It is true that "when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason," the employer must notify the employee of his or her eligibility to take such leave. 29 C.F.R. § 825.300(b)(1). It is well-established, however, that a claim that an employer failed to notify an employee of FMLA rights is a FMLA interference claim, not a disability discrimination claim.[10] E.g., Graves v. Brandstar, Inc., 67 F.4th 1117, 1121 (11th Cir. 2023).[11] Further, it is undisputed that, despite receiving training

---

[10] Plaintiff did not plead an FMLA interference claim in the complaint. Dkt. No. 1. A non-moving plaintiff may not assert a new claim in response to the defendant's summary judgment motion. Gilmour v. McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004).
[11] This argument also introduces issues about Plaintiff's eligibility for FMLA leave and Defendants' corresponding

on the FMLA, Plaintiff never formally put in for FMLA leave. Dkt. Nos. 21-1 at 1, 21-5 at 32, 127:15-17. Thus, no reasonable juror could find in Plaintiff's favor because this "breakdown" in the reasonable accommodation process was attributable to Plaintiff, not the employer. Stewart, 117 F.3d at 1287. This precludes liability for disability discrimination. Id. ("[L]iability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown" (quoting Beck v. Univ. of Wis. Bd. of Regents, 75 F.3d 1130, 1137 (7th Cir. 1996)). Finally, even if Plaintiff's supervisors told her that sick or annual paid leave must be used before taking unpaid leave,[12] the record shows that Plaintiff's supervisors offered her liberal leave and allowed her to leave work on several occasions when she experienced the episodes of crying. Dkt. Nos. 23-4 at 69, 68:6-7, 23-5 at 48, 47:13-48:7, 109, 108:20-22, 23-6 at 43, 168:3-11, 52, 202:14-24. Thus, Plaintiff has not met her burden to show indefinite leave is a reasonable accommodation, and the undisputed facts show that Defendants never denied a formal request for leave.

---

obligations. The parties did not brief this, and such issues are not before this Court.

[12] Under the FMLA, "an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or family leave of the employee for leave . . . for any part of the 12-week period of such leave under such subsection." 29 U.S.C. § 2612(d)(2)(A).

Third, Plaintiff argues more generally that her supervisors should have "raised the possibility or made suggestions" about other accommodations, such as teleworking and flexible scheduling. Dkt. No. 23 at 21. Plaintiff undercuts this argument because she also alleges that her supervisor offered her "liberal" use of her leave and "flexibility in her work schedule" in May 2007. Dkt. No. 1 ¶ 10. Plaintiff alleges, however, that this offer was "not really an accommodation" because all ATF employees had flexible work schedules. Id.; see also Dkt. No. 23-5 at 111, 110:17-20. Plaintiff cannot have it both ways by arguing working from home and flexible working would be a reasonable accommodation her employer was required to provide while simultaneously asserting that it was "not really an accommodation" at all. See Dkt. Nos. 1 ¶ 10, 23.

Further, it is undisputed that Plaintiff never asked to telework. Dkt. Nos. 21-17 ¶ 78, 26-1. "The Rehabilitation Act does not require employers to speculate about their employees' accommodation needs." Owens, 52 F.4th at 1334. Instead, under the RA, "to trigger an employer's duty to provide a reasonable accommodation, the employee must (1) make a specific demand for an accommodation and (2) demonstrate that such accommodation is reasonable." Id.

Just as in Owens, even if Plaintiff provided her employer information about her depression, she did not, and does not before this Court, "provide enough information to allow an employer to

understand how the accommodation would address the limitations her disability presents." Id. The parties agree that working in FReD was an essential element of the Management Analyst position. Dkt. Nos. 21-17 ¶ 9, 23-1 at 100, 26-1. The parties dispute, however, whether teleworking would allow her to access FReD, and an accommodation is unreasonable if it does not enable the employee to perform the essential functions of the job. Compare Dkt. Nos. 21-5 at 48, 191:9-10, 55, 219:24-25, 23-5 at 112, 111:1-21 (explaining that the FReD system did not function at employees' homes in 2007), 136, 135:8-23 (Plaintiff's supervisor testified that she checked with the personnel department to ask if Plaintiff could telework, and it was not available at the time.) with Dkt. No. 30-1 at 21 (arguing that "it is undisputed that telecommuting was a regular practice in [Plaintiff's] workplace and that it was possible to access FReD from her laptop" with no citation to the record); S.D. Ga. L.R. 56.1.[13] Even if FreD access was possible,

---

[13] This Court does not have "an obligation to parse a summary judgment record to search out facts or evidence not brought to the court's attention." Atlanta Gas Light Co. v. UGI Utils., Inc., 463 F.3d 1201, 1208 n.11 (11th Cir. 2006). "Notwithstanding this, [the Court] reviewed sufficient portions of the record to give us comfort that able counsel have not overlooked significant evidence in their briefs." Id. The Court finds that the only record evidence supporting that Plaintiff would be able to perform the essential functions of her job while telecommuting is her own testimony, in which she, herself, had varying, inconsistent accounts about her ability to telework. Compare Dkt. Nos. 23-4 at 51, 50:13-24 (Plaintiff testified in 2009 that she did not know much about telecommuting, but it is possible to work from home on FreD) with 23-5 at 77, 76:3-8 (Plaintiff testified in 2012 that she did not

it was indisputably the root of Plaintiff's stress; Plaintiff does not explain how accessing it from home would address the limitations that her disability presented at the time. <u>See</u> <u>Owens</u>, 52 F.4th at 1334; Dkt. Nos. 21-5 at 24, 93:5-12, 21-7 at 14:8-11, 25-1 ¶ 28; <u>see generally</u> Dkt. Nos. 23, 26, 30. Thus, because Plaintiff has not shown how teleworking would allow her to perform the essential functions of her job or how it would address the limitations of her disability, Plaintiff has not met her burden of establishing that this particular accommodation is reasonable.

Simply put, the record does not support Plaintiff's final argument—that her supervisors did not engage with her about other accommodations. Instead, the record shows that ATF continued to "expend time and expense to explore the universe of reasonable accommodations" by meeting with Plaintiff on numerous occasions,

---

know about telecommuting at the relevant time), 163:3-10 (Plaintiff's attorney stated in closing argument of the 2012 EEOC hearing that it was possible to work from home on FreD) <u>and</u> 23-6 at 20, 73:6-74:14 (Plaintiff testified in 2016 that she accessed FreD on her laptop in 2007), 32, 122:14-124:16 (Plaintiff testified in the same 2016 EEOC hearing that she now knows what teleworking is, but in 2007, "it wasn't done a lot at all."), 72, 283:5-18 (Plaintiff testified in 2016 that she worked from home in 2007, so FReD access was possible). A party may not create a genuine issue of material fact by providing a sworn statement that contradicts, without explanation, previously given unambiguous testimony. <u>See</u> <u>Kelly v. Dun & Bradstreet, Inc.</u>, 641 F. App'x 922, 923 (11th Cir. 2016). Even if there is a factual dispute regarding the ability to telework on FReD, it is immaterial because this accommodation suggestion fails on two separate grounds; Plaintiff has not met her burden to show that (1) she made a specific demand to telework or (2) provided enough information for her employer to understand how teleworking would address the stress of FReD.

suggesting the ATF's Employee Assistance Program, promptly moving her to an office with a window, giving her the Request for Reasonable Accommodation form a few months before it was submitted, and keeping her apprised of the lack of a vacant position for a lateral transfer.[14] See Owens, 52 F.4th at 1335; Dkt. Nos. 21-17 ¶¶ 24, 29, 48, 50–55, 26-1. "Liability simply cannot arise" for a failure to accommodate "when an employer does not obstruct an informal interactive process; makes reasonable efforts to communicate with the employee and provide accommodations based on the information it possesses; and the employee's actions cause a breakdown in the interactive process." Stewart, 117 F.3d at 1287. Even so, the Eleventh Circuit has reiterated that "'where a plaintiff cannot demonstrate [a] reasonable accommodation,'" the employer's lack of investigation into reasonable accommodation is *unimportant*." Willis v. Conopco, Inc., 108 F.3d 282, 285 (11th Cir. 1997) (per curiam) (emphasis added) (quoting Moses v. Am. Nonwovens, Inc., 97 F.3d 446, 448 (11th Cir. 1996)); see also Kassa v. Synovus Fin. Corp., 800 F. App'x 804, 809 (11th Cir. 2020) ("When an employee fails to satisfy his burden of identifying an

---

[14] The record also elucidates how if Defendants had responded differently, Plaintiff may have a viable RA claim: for example, if Defendants rejected Plaintiff's amended DOJ Form 100A for no reason with a vacant GS-7 position for which Plaintiff was qualified or if Plaintiff felt she had no choice but to relocate from the Golden Isles because the hypothetical vacant G-9 position was not local. See Dkt. No. 21-5 at 30–31, 118:6–121:3, 78, 309:21–313:10.

accommodation that would be reasonable, however, no liability attaches to the employer for failing to engage in an 'interactive process.'" (citation omitted)).

Thus, Plaintiff has not met her burden to show any of her requested accommodations were reasonable. As a result, Plaintiff fails to establish a prima facie claim of disability discrimination. The Court holds that Defendants did not discriminate against Plaintiff because her requests were unreasonable as a matter of law.

## CONCLUSION

For these reasons, Defendants' motion for summary judgment, dkt. no. 21, is **GRANTED**, and Plaintiff's motion for summary judgment, dkt. no. 23, is **DENIED**. The Clerk is **DIRECTED** to enter judgment in favor of Defendants and close this case.

**SO ORDERED** this 30th day of December, 2024.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA